IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

LESLIE RUDY,                          :

        Plaintiff,             :
                                 Case No. 3:10CV093

 vs.                                  :
                                 District Judge Thomas M. Rose

MICHAEL J. ASTRUE,                    :    Magistrate Judge Sharon L. Ovington
    Commissioner of the Social
    Security Administration,          :

        Defendant.              :

# REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff Leslie Rudy sought financial assistance from the Social Security Administration by applying for Supplemental Security Income ["SSI"] and Disability Insurance Benefits ["DIB"] in June 2006, alleging disability since March 8, 2005. (Tr. 73-75, 398-400). Although Plaintiff originally claimed to be disabled by back problems (*see* Tr. 82), he later testified and now maintains in this Court that his history of leg problems, including surgery to his right knee (Tr. 476); shoulder pain (Tr. 478); hypertension; obesity; vision problems; and possible

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

1

history of a cerebral vascular accident (Tr. 479); also impede his ability to work. (*See* Doc. #6).

After various administrative proceedings, Administrative Law Judge ["ALJ"] Thaddeus Armstead, Sr. denied Plaintiff's SSI and DIB applications based on his conclusion that Plaintiff's impairments do not constitute a "disability" within the meaning of the Social Security Act. (Tr. 16-26). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. # 6), the Commissioner's Memorandum in Opposition (Doc. # 8), Plaintiff's Reply (Doc. # 9), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision and remand for payment of benefits. The Commissioner seeks an Order affirming the ALJ's decision.

## II.    BACKGROUND

Plaintiff was 52 years old at the time of the administrative decision, and thus was considered to be "closely approaching advanced age" for purposes of resolving his DIB and SSI claims. *See* 20 C.F.R. §§ 404.1563(d); 416.963(d);[2] (*see*

---

[2]Subsequent citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations.

*also* Tr. 24).  He has a ninth grade, "limited" education.  *See* 20 C.F.R. §

416.964(b)(3); (*see also* Tr. 87).  Plaintiff has worked in the past as a machinist.  (Tr.

83, 93).

At an administrative hearing held on M ay 11, 2009, Plaintiff testified that

he stood 6'3" tall and weighed 292 pounds.  (Tr. 472-73).  He had worked at his

last job for 18 years.  (Tr. 474).  He testified that he had not worked since March

2005, due to pain in his legs and back.  (Tr. 476).  He further testified that he had

surgery on his right knee in 2008.  (*Id.*).  Plaintiff stated that he stopped working

when he lost his job due to the safety hazard posed by the level of morphine

medication he was taking for pain.  (Tr. 477).  He did not look for other work

because he could "just barely get out of the bed" due to back pain.  (Tr. 478).

Plaintiff testified to pain in his right shoulder for which he was placed "on

stronger pain medication."  (Tr. 478).  He could not lift his shoulders due to pain.

(*Id.*).

When examined by his counsel, Plaintiff testified that the pain in his back

radiated into his hips and legs, affecting his ability to walk.  (Tr. 479-80).  He

estimated that in 2007, he could have walked a mile or so, and that he could have

lifted about 10 to 20 pounds at that time.  (Tr. 481).  He indicated, however, that

his abilities had since declined.  (Tr. 481-82).  Plaintiff testified that he had

difficulty climbing stairs and walking on uneven surfaces, and that he often had to alternate between sitting and standing positions.  (Tr. 482-83).

Turning to other evidence, the parties have provided detailed and informative descriptions of Plaintiff's medical records and other pertinent evidence.  (*See* Doc. #6 at 3-9; Doc. #8 at 2-5).  In light of this, and upon consideration of the complete administrative record, there is no need to fully reiterate or expand the parties' descriptions.  Still, describing the relevant medical source opinions will help frame further review.

Plaintiff relies primarily on the opinions of Drs. Yang and Gomaa, whom he identifies as his "treating physicians."  (Doc. #6 at 11, 13).  Plaintiff treated with Ham Mok Yang, M.D., an internist, from April 17, 2008 through February 2, 2009.  (Tr. 278-97, 329-30).  Plaintiff was treated for severe hypertension, shoulder pain, tremors and back pain.  An April 17, 2008, MRI of Plaintiff's brain demonstrated pansinusitis and moderate small-vessel ischemic changes in his white matter.  (Tr. 296).  A July 9, 2008, ECG was borderline.  (Tr. 295).  X-rays of his left shoulder taken on July 29, 2008, showed a 5mm calcification at the humeral head, and no acute abnormalities.  (Tr. 293).  X-rays of his lumbar spine taken that same date showed early spondylosis.  (Tr. 292).  A CT scan of the lumbar spine, also performed on July 29, 2008, demonstrated spondylosis, mild

4

disc bulging at L3-4, a central disc protrusion at L4-5 which caused posterior thecal sac displacement, diffuse protrusion at L5-S1 with no significant impingement on the thecal sac, and L5 pars defect on the left.  (Tr. 289-90).  A CT scan of Plaintiff's cervical spine showed neural foraminal narrowing due to degenerative changes and spondylosis.  (Tr. 288).

On January 8, 2009, Dr. Yang completed a residual functional capacity assessment questionnaire.  (Tr. 264-68).  Dr. Yang opined that due to his hypertension, low back pain, and knee pain, Plaintiff could not lift/carry any weight during an eight hour workday.  (Tr. 264-65).  Plaintiff also was deemed unable to stand, walk or sit during an eight hour workday, due to his low back pain and knee pain.  (Tr. 265).  Plaintiff was never to climb, balance, stoop, crouch, kneel, and crawl, and was limited in his ability to reach, handle, finger, feel, and push/pull.  (Tr. 266).  He was limited in his ability to be exposed to heights, moving machinery, chemicals, temperature extremes, and vibrations. (Tr. 267).  Dr. Yang concluded that Plaintiff could not perform even sedentary work activity.  (Tr. 268).

Dr. Yang also responded to interrogatories wherein he indicated that he had treated Plaintiff for approximately two years.  (Tr. 269-77).  Dr. Yang listed Plaintiff's diagnoses as hypertension, knee pain, low back pain, depression, and

headache.  (Tr. 370).  He opined that Plaintiff could not perform any of the mental activities needed for work because Plaintiff could not work due to his physical impairments.  (Tr. 271-76).  He stated that Plaintiff was extremely limited in his activities of daily living, social functioning, and in his concentration, persistence, and pace.  (Tr. 276-77).

Laila Gomaa, M.D., a pain management specialist, examined Plaintiff on November 18, 2008.  (Tr. 300-08).  Examination revealed no sensory, motor, or reflex deficits in the extremities.  (Tr. 303).  Plaintiff had reduced range of motion, tenderness on palpation, and muscle spasms.  Cervical motion was reduced. (*Id*.).  After reviewing a CT scan of Plaintiff's cervical spine and his lumbar MRI, Dr. Gomaa diagnosed chronic pain syndrome secondary to degenerative disc disease, lumbar spondylosis and myofascial pain syndrome.  Dr. Gomaa treated Plaintiff with medication and physical therapy.  (Tr. 305).

On December 8, 2008, Dr. Gomaa completed a residual functional capacity assessment questionnaire.  (Tr. 259-63).  According to Dr. Gomaa, based on the January 2008, lumbar spine MRI which showed multiple disc protrusions and right S1 nerve root entrapment, Plaintiff could lift/carry 10 pounds occasionally and five pounds frequently.  (Tr. 259-60).  Dr. Gomaa opined that Plaintiff could walk/stand for two hours out of eight and uninterrupted for 15 minutes due to

6

osteoarthritis of his right knee.  (Tr. 260).  He could sit for four hours out of eight

and uninterrupted for two thirds of an hour, owing to his disc protrusions.  (*Id.*).

Plaintiff never could climb, balance, stoop, crouch, kneel or crawl because of

lumbar disc protrusions and right knee osteoarthritis.  (Tr. 261).  Plaintiff had to

limit repetitive upper extremity work because of calcification of the left shoulder.

(*Id.*).  Dr. Gomaa concluded that Plaintiff could perform only sedentary work

activity.  (Tr. 263).

  The Commissioner, conversely, urges that the ALJ reasonably relied on the

testimony of a medical expert witness, Dr. Malcolm Brahms (*see* Doc. #8 at 14-15),

to whose opinion the ALJ gave "great weight."  (*See* Tr. 23).  Testifying at the

second administrative hearing held on May 11, 2009 (*see* Tr. 464-506), Dr. Brahms

opined that Plaintiff did not meet or equal the listings.  (Tr. 485).  Dr. Brahms'

review of the record revealed Plaintiff to be an obese male with some transient

ischemic attacks ["TIAs"] in the past.  (*Id.*).  Plaintiff also had low back pain,

hypertension, and some loss of vision in his left eye.  (*Id.*).  Dr. Brahms testified

about some MRIs and a CT scan of Plaintiff's spine that showed disc

degeneration at the L4-5 level; a disc protrusion at that level as well as at L5-S1;

some impingement of the S1 nerve root (*id.*); and some canal narrowing at several

levels of Plaintiff's cervical spine.  (Tr. 486).  He also testified that although a torn

meniscus was diagnosed as a result of an MRI of Plaintiff's knee in June 2008, a subsequent arthroscopic procedure showed no tearing of the meniscus, only arthritic changes and some loose bodies, which were removed.  (Tr. 485-86).

Based on his review of the evidence, Dr. Brahms opined that Plaintiff was limited to work at the light exertion level with additional non-exertional restrictions.  (Tr. 486).  He indicated that Plaintiff should avoid kneeling, stooping, and crawling, as well as repetitive lifting below waist level.  (Tr. 487). Dr. Brahms testified that Plaintiff also should avoid climbing stairs, ladders, and scaffolding, and should avoid hazardous machinery.  (*Id.*).  Due to calcification densities in Plaintiff's left shoulder, Dr. Brahms also felt that he should perform only occasional lifting above shoulder level with that extremity.  (Tr. 488). However, Dr. Brahms found "no evidence of any essentially motor or reflex impairment."  (Tr. 489).

When examined by Plaintiff's counsel, Dr. Brahms testified that it would reasonable to expect that Plaintiff's pain and functionality could be better or worse on some days than on others.  (Tr. 490-91).  He further testified that the evidence in the record confirmed problems in Plaintiff's lumbar spine that, combined with his obesity, reasonably could be expected to cause pain.  (Tr. 491). Dr. Brahms declined to speculate as to whether Plaintiff might have greater

8

limitations than could be expected from the objective medical findings alone, because Dr. Brahms had never examined Plaintiff – "I can only go on what I read in his records."  (Tr. 492).

Dr. Brahms essentially agreed with Dr. Gomaa's assessment of Plaintiff's limitations, with the exception of suggested restrictions on handling and fingering in Plaintiff's upper extremities.  (Tr. 492-93).  As to Dr. Yang's assessment, Dr. Brahms testified as follows:

> [Dr. Yang] do[es]n't say what- - how much weight [Plaintiff] can lift.  I assume that [Dr. Yang] didn't answer that. . . . [Dr. Yang] marked never for climbing, balancing and so forth[,] and I think I agree with that. Are physical affected the impairments and [Dr. Yang] said reaching, yes.  I disagree with that.  Hand[l]ing, fingering[,] I disagree with that completely.  And I think that we're in agreement with certain things and disagreeing in other things, and I can only go on what I reviewed in the record.  Other than their RFC the balance that I reported on is the objective evidence[ ] that I found in the record.

(Tr. 493).  Dr. Brahms also affirmed that perceived pain may vary from individual to individual because pain is subjectively interpreted by each person. (Tr. 495).

The ALJ also gave "some weight" to the opinion of state agency reviewing physician Esberdado Villanueva, M.D. (*see* Tr. 23), who reviewed the record on September 13, 2006, at the request of the Ohio Bureau of Disability

9

Determination. (Tr. 185-92). Dr. Villanueva opined that Plaintiff could occasionally lift/carry up to 50 pounds; frequently lift/carry up to 25 pounds; and stand, walk or sit for six hours. (Tr. 186). Plaintiff was never to climb ladders, ropes, and scaffolds. (Tr. 187). According to Dr. Villanueva, Plaintiff's depth perception and field of vision were limited by lack of binocular vision. (Tr. 188). Plaintiff was to avoid all exposure to hazards such as machinery and heights. (Tr. 189).

## III. THE "DISABILITY" REQUIREMENT & ADMINISTRATIVE REVIEW

### A. <u>Applicable Standards</u>

To be eligible for SSI or DIB, a claimant must be under a "disability" within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See id*. A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *Wyatt v.*

10

*Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  (*See* Tr. 17-18); *see also* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

11

### B.    The ALJ's Decision

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 8, 2005, his alleged onset date, and that he continued to meet the disability insured-status requirements through December 31, 2010.  (Tr. 18).

The ALJ found at Step 2 that Plaintiff has the severe impairments of borderline intellectual functioning, calcification in his left shoulder, lumbar and cervical degenerative disc disease, right knee degenerative disease with loose bodies in the joint, restricted left eye vision, hypertension, and obesity.  (*Id.*).  The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that meets or equals the level of severity described in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 19).

At Step 4, the ALJ found that Plaintiff retained the residual functional capacity ["RFC"] to perform a limited range of light work with the following restrictions: limited to the performance of simple and multi-step tasks; restricted from repetitive lifting (constant lifting) below waist level; restricted to occasional overhead or over shoulder reaching with his left upper extremity; restricted from jobs that require any climbing of ladders, ropes, scaffolding, ramps or stairs; no kneeling, crawling, or stooping; no exposure to hazards such as or similar to

12

unprotected heights and dangerous moving machinery; no commercial driving; restricted from any use of foot pedals, leg controls, or similar lower extremity controls; restricted to lifting no more than 10 pounds frequently and 20 pounds occasionally; must have the opportunity to sit or stand at his option; and cannot perform any job that requires depth perception and full field of vision.  (Tr. 21). The ALJ next found that Plaintiff could not perform his past relevant work as a machinist, but was capable of performing other jobs in the national economy. (Tr. 24).  This assessment, along with the ALJ's findings throughout his sequential evaluation, led him ultimately to conclude that Plaintiff was not under a disability and hence was not eligible for SSI or DIB.  (Tr. 16-26).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of*

*Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r. of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    DISCUSSION

### A.    <u>The Parties' Contentions</u>

Plaintiff contends the ALJ erred by rejecting the opinions of his treating physicians, Drs. Yang and Gomaa, and relying instead on the opinion of the non-examining medical expert, Dr. Brahms. (Doc. # 6 at 11). Plaintiff argues that the ALJ allowed Dr. Brahms to "do the fact finding for him" by relying on Dr. Brahms' statements as the basis for rejecting Drs. Yang's and Gomaa's opinions. (*Id.*). Next, Plaintiff contends the ALJ failed to appropriately evaluate Plaintiff's credibility as to his disabling pain in accordance with Social Security Ruling ["SSR"] 96-7P. (*Id.* at 16). According to Plaintiff, the ALJ simply relied on Dr. Brahms' opinion as a basis for finding that Plaintiff was not credible, providing no other rationale for discounting Plaintiff's credibility. (*Id.* at 17). Plaintiff urges that the ALJ's purported errors in these regards mandate a reversal of the ALJ's decision and an award of benefits. (*Id.* at 19).

The Commissioner contends that substantial evidence supports the ALJ's decision that Plaintiff was not disabled because he could perform a significant number of jobs. (Doc. # 8 at 9). Defendant further argues that the ALJ gave the opinions of Dr. Gomaa and Dr. Yang appropriate consideration pursuant to 20 C.F.R. §§ 404.1527, 416.927, and SSR 96- 2p. (*Id.* at 11). According to the Defendant, the ALJ provided good reasons for not relying on the entire opinions of Dr. Gomaa and Dr. Yang. (*Id.*).

15

### B.    Medical Source Opinions

#### 1.    *Treating Medical Sources*

The treating physician rule, when applicable, requires an ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor, a one-time examining physician or psychologist, or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406; *see Wilson*, 378 F.3d at 544.  A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record.  *See id*.

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).  More weight generally is given to the opinions of examining medical sources than to the opinions of non-examining medical sources.  *See* 20 C.F.R. § 416.927(d)(1).  Still, the opinions of non-examining state

16

agency medical consultants have some value, and under some circumstances can be given significant weight.  *See infra*.

        2.     *Non-Treating Medical Sources*

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p, 1996 WL 374180 at *2.  Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source.  *See id*. at *2-*3.  As the Regulations explain, "[i]n deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  20 C.F.R. § 416.927(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 416.927(d), including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. § 416.972(f); *see also* Ruling 96-6p at *2-*3.

**C.**    **<u>Analysis</u>**

        1.     *Evaluation of Medical Source Opinions*

Plaintiff contends that ALJ Armstead should have accorded controlling weight to the RFC opinion of Dr. Yang, who reported Plaintiff to be disabled in

January 2009 (Tr. 264-68, 269-77), and to the opinion of Dr. Gomaa, who reported

in December 2008 that Plaintiff was capable of only sedentary work.  (Tr. 259-63).

The record reflects that the ALJ gave "[s]ome weight" to the opinions of

both Dr. Yang and Dr. Gomaa regarding "some of the non-exertional, especially

postural, restrictions" to which they believed that Plaintiff was subject.  (*See* Tr.

24).  However, he expressly gave "no weight" to either of those doctors' opinions

to the extent that they found Plaintiff unable to perform work at the light exertion

level.  (*Id.*).  In essence, ALJ Armstead determined that those opinions were not

supported by objective medical evidence in the record and also were inconsistent

with substantial other medical evidence of record.  (*See id.*).  The ALJ's

explanation for declining to fully accept Drs. Yang's and Gomaa's opinions

demonstrates that he evaluated those physicians' opinions subject to required

regulatory factors of supportability and consistency.  (*Id.*).

Substantiating the ALJ's finding that Dr. Yang's opinion was not

supported by the record are multiple diagnostic test results that, according to Dr.

Brahms, constitute objective medical evidence that Plaintiff's impairments were

not sufficiently severe to warrant his claimed limitations.  For example, the ALJ

cited to an MRI of Plaintiff's spine showing discogenic changes at L4-5 and at

L5-S1, with some impingement of the S1 nerve root (Tr. 22; *see* Tr. 228-29), as well

as to a cervical spine CT scan showing some canal narrowing at several levels.
(*Id.*; *see* Tr. 288).  *See* 20 C.F.R. § 416.927(d)(4) ("Generally, the more consistent an
opinion is with the record as a whole, the more weight we will give that
opinion."); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th
Cir. 1994) ("The Secretary, however, is not bound by treating physicians'
opinions, especially when there is substantial medical evidence to the contrary.").

In addition, the ALJ based his assessment of Plaintiff's RFC on the
testimony of the medical expert, Dr. Brahms, who indicated that Plaintiff was
restricted to work at the light (rather than sedentary) exertion level.  (*See* Tr. 23).
In assessing Plaintiff's impairments and determining functional equivalence, the
ALJ reasonably relied on that testimony.  (*Id.*).  As the Commissioner aptly notes
(*see* Doc. #8 at 14), in *Richardson v. Perales*, 402 U.S. 389, 408 (1971), the Supreme
Court held that it is acceptable for an ALJ to use a medical expert whose primary
duty is to make complex medical cases understandable to the lay examiner.
Moreover, a medical expert may offer his own opinion regarding the claimant's
condition.  *See* 20 C.F.R. § 416.927(f)(2).  The ALJ properly may rely on a non-
examining medical expert's testimony in order to make sense of the record.  *See*
*Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001).  In addition, an ALJ's reliance on
the opinion of a non-examining medical expert is proper if the expert's opinion is

based on objective reports and opinions.  *See Barker v. Shalala*, 40 F.3d 789, 794-95

(6th Cir. 1994); *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir.

2001).

Finally, this Court questions whether Dr. Gomaa's opinion at issue herein

qualifies as that of a "treating source" for purposes of the treating physician rule.

The record indicates that Dr. Gomaa based her opinion that Plaintiff was capable

of performing only sedentary exertional work on a single examination of Plaintiff

on November 18, 2008.  (*See* Tr. 300-08).  Dr. Gomaa thus does not appear to meet

the regulatory definition of a treating source.  *See* 20 C.F.R. § 416.902 (defining a

treating source as a physician who has had an "ongoing treatment relationship

with you").  Even if a treating relationship thereafter developed between this

physician and Plaintiff, no such relationship existed at the time that Dr. Gomaa

rendered her opinion.  As such, ALJ Armstead was not required to evaluate Dr.

Gomaa's opinion as that of a treating source, nor was Dr. Gomaa's opinion

entitled to the degree of deference accorded to the opinions of treating

physicians.  Accordingly, the ALJ's decision in this regard is supported by

substantial evidence.

2.    _Plaintiff's Pain and Credibility_

Plaintiff also contends that the ALJ merely relied upon the opinion of Dr. Brahms to find that Plaintiff was not credible, without considering the factors required by SSR 96-7p.

In determining whether a claimant is disabled, an ALJ must consider all of the claimant's symptoms, including pain, and the extent to which those symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence.  This assessment involves a two step process.  First, the ALJ must determine whether an underlying medically determinable physical or mental impairment exists that reasonably could be expected to produce the claimant's symptoms.  Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities.  20 CFR § 416.929.  In many disability cases, the cause of disability is not necessarily the underlying condition itself, but rather the symptoms associated with that condition.  _Rogers v. Comm'r of Soc. Sec._, 484 F.3d 234, 247 (6th Cir. 2007).  Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side

effects of any medication taken to alleviate the symptoms; other treatment or measures undertaken to relieve symptoms; and any other factors bearing on the limitations of the claimant to perform basic functions. *Id.*; SSR 96-7p.

In addition, the credibility of the claimant's complaints regarding symptoms, or their intensity and persistence, must be evaluated based on a consideration of the entire case record, and the ALJ is required to explain his credibility determinations in such a way as "to make clear to the individual and to any subsequent reviewers the weight the Adjudicator gave to the individual's statements and the reason for that weight." SSR 96-7p. Blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility that are not consistent with the entire record and the weight of the relevant evidence. *Rogers*, 484 F.3d at 248.

Nowhere in his decision does the ALJ appear to have addressed Dr. Brahms' testimony that he considered only the objective evidence in finding Plaintiff capable of performing a reduced range of light work. (*See* Tr. 490). Dr. Brahms explicitly acknowledged that Plaintiff's obesity could impact his pain level beyond the objective findings. (Tr. 489-90). Dr. Brahms also noted that the combined effect of obesity and the physical impairments experienced by Plaintiff on an individual's ability to work would vary according to the individual. (Tr.

495). Although he recognized that Plaintiff might have greater limitations than shown by the objective medical findings alone, Dr. Brahms declined to give an opinion as to any additional limitations because he never had examined Plaintiff. (Tr. 492).

Despite those concessions by the medical expert, the ALJ's decision does not mention, much less discuss, Plaintiff's testimony that he barely can get out of the bed due to back pain (Tr. 478), that he cannot lift his shoulders, and that he was put on "stronger pain medication" due to pain in his right shoulder. (*Id.*). Instead, the ALJ merely states that:

> the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 22).

By offering such a cursory assessment of Plaintiff's credibility, the ALJ failed to articulate his credibility determination in such a way as to allow subsequent reviewers, including this Court, to make a meaningful review of the credibility determination, as required by SSR 96-7p. Indeed, the ALJ's assessment as to Plaintiff's credibility here comes perilously close to the "blanket assertion" condemned by the court in *Rogers*, 484 F.3d at 248. Accordingly, Plaintiff's challenge to the ALJ's evaluation of his credibility is well taken.

23

## VI.    REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak.  *See id*.  Nevertheless, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g), due to the problems detailed above.  On remand, the ALJ should be directed to (1) evaluate Plaintiff's testimony and the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulation

and Rulings and by case law; and (2) evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for SSI or DIB should be granted.

**IT THEREFORE IS RECOMMENDED THAT**:

1. The ALJ's decision be VACATED;

2. No finding be made regarding whether Plaintiff is under a "disability" within the meaning of the Social Security Act;

3. This matter be REMANDED to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations and with any decision adopting this Report and Recommendations; and

4. The case be TERMINATED on the docket of this Court.

January 21, 2011                                    s/ Sharon L. Ovington
                                                           Sharon L. Ovington
                                                     United States Magistrate Judge

25

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981).